IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JENNIFER LASHONE DINKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:11-cv-762-TFM |
| ) | [wo] |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

The plaintiff, Jennifer Lashone Dinkins ("Plaintiff" or "Dinkins"), protectively filed an application for Social Security supplemental income benefits under Title XVI on June 6, 2008, for a period of disability which allegedly began May 2, 2008. (Tr. 112-114). After the initial application was denied, Dinkins timely requested a hearing before an administrative law judge ("ALJ") which took place on March 29, 2010, at which time the onset date was amended to June 6, 2008. (Tr. 28-63). In the decision issued on August 27, 2010, the ALJ denied Dinkins' claim finding that while she does suffer from the severe impairments of "seizure disorder; major depressive disorder; anxiety disorder, not otherwise specified; degenerative arthritis of the left knee; morbid obesity; and migraine headache disorder" he also found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (Tr. 13). The ALJ also found that Dinkins "has the residual functional capacity to perform sedentary work." (Tr. 15). A request for review was submitted to the Appeals Council which declined review on July 14,

2011. (Tr. 1-6). Thus, the decision of the ALJ became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The parties consent to the undersigned rendering a final judgment in this lawsuit pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1. The Court has jurisdiction over this lawsuit pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). After a thorough review of the record in this case and the briefs of the parties, the Court concludes that the decision of the Commissioner should be REVERSED and this case REMANDED to the Commissioner for further proceedings.

## I. NATURE OF THE CASE

Dinkins seeks judicial review of the Commissioner's decision denying her application for supplemental security income. United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The Court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II. BACKGROUND

Dinkins was born on February 9, 1972, (Tr. 112) and has completed the eleventh grade. (Tr. 34). Dinkins' last date of employment was May 2, 2008. *Id*. Dinkins testified to having worked as a dishwasher, a cook, a driver, and a member of a cleaning crew. (Tr.

---

[1] Pursuant to the Social Security Independence and program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred tot he Commissioner of Social Security.

2

35-37). Dinkins gave a medical history to the ALJ which showed multiple visits to the East Alabama Medical Center ("EAMC"), treatement by a neurologist, Dr. Kishore Chivukula, M.D., and several emergency room visits for alleged seizures. (Tr. 16-21). The ALJ conducted a detailed review of Dinkins' medical history, specifically the many records surrounding the alleged seizures which were purported to have begun in May of 2008 and lasting through the last medical record considered by the ALJ in December 2009. *Id.*

### III. STANDARD OF REVIEW

The Court reviews a social security case to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards. *Hand v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (stating the court should not re-weigh the evidence). The Court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelly v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).

Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence

as a reasonable person would accept as adequate to support the conclusion.  *Hand v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) and *MacGregor v. Bowen*, 785 F.2d 1050, 1053 (11th Cir. 1986)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129,131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't of Health and Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted).  There is no presumption that the Secretary's conclusions of law are valid.  *Id.; Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### IV. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB")

provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[2]  *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[3]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  Despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to:

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

---

[2] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[3] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment(s) severe?
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[4]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual

---

[4] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

Functional Capacity (RFC).  *Id*. at 1238-39.  RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence.  *Id*.  It also can contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[5] ("grids") or hear testimony from a Vocational Expert (VE).  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

## V. STATEMENT OF THE ISSUES

Plaintiff alleges the ALJ made two errors.  (Pl. Br., as amended, Doc 13 at 1).  First, Plaintiff argues "the ALJ committed reversible error by not having a medical expert give an opinion as to whether Plaintiff's seizure disorder equaled the seizure listing at 20 CFR Part 101 Subpart P Appendix 1 § 11.02 and 11.03."  *Id*.  Second, Plaintiff argues "the ALJ committed reversible error by not obtaining medical expert opinion as to the meaning of Plaintiff's subtherapeutic medication levels." *Id.*

---

[5] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

## VI. DISCUSSION AND ANALYSIS

The plaintiff raises several issues and arguments related to this Court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Wiggins v. Schwiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) in that "[n]o presumption of validity attaches to the Secretary's determination of the proper legal standards to be applied in evaluating claims"). However, the Court pretermits discussion of the plaintiff's specific arguments because the Court concludes that the ALJ erred by not having a Medical Expert to give opinion as to whether Plaintiff's seizure disorder equaled the seizure listings. Ergo, the ALJ's conclusion that the plaintiff is not disabled is not supported by substantial evidence.

As previously stated the burden of proof rests on a claimant to establish a prima facie case of qualifying disability. *Phillips*, 357 F.3d at 1237-39. Dinkins argues that "whether or not a claimant equals a Listing has to be determined by a medical opinion, and since there is none in the exhibits, the ALJ would have had to have an ME either examine her medical records or testify regarding this matter." (Pl. Br. at 9). The ALJ correctly established the requirements to meet of Section 11.02 (Epilepsy - Convulsive) or 11.03 (Epilepsy - Nonconvulsive) Listings. (Tr. 14). The ALJ held:

> In order to meet either listing, there must be a "detailed description of a typical seizure pattern, including all associated phenomena." "At least one detailed description of a typical seizure is required." Section 11.00(A) mandates that "a reporting physician should indicate the extent to which of seizures reflects

> his own observation or the source of ancillary information." In the usual case of an actual seizure disorder, this requirement is satisfied by a physician's report of continuous video EEG/EKG monitoring. In this case, however, there is no such professional observation. Section 11.00(A) goes on to state that "[t]estimony of person other than the claimant is essential for the description of the type and frequency of seizures if professional observation is not available." The only testimonial description of any "seizure" presented at the hearing was that of the claimant. Accordingly, the claimant has failed to provide the evidence necessary to support a finding that either Section 11.02 or Section 11.03 has been met.

(Tr. 14). A footnote to this section states that when the Listing argument was first raised by Dinkins' attorney the ALJ advised the claimant that "the hearing would have to be continued in order to secure the presence of a medical expert. Acting through her representative, the claimant indicated that a continuance would not be necessary; that she believed the evidence was sufficient to 'meet' the applicable listings and wished to proceed." *Id*.

The Court finds that this is an over-characterization of the conversation that took place on the date of the hearing. After the opening statements by Dinkins' counsel the following discussion occurred:

> ALJ: Got a question. Do you want me to -- do you want to try to present an equals case for the seizure listings?
>
> ATTY: I mean, I, I can –
>
> ALJ: These -- because if -- I mean, because if you, if you want to do that, what, what we'll have to do is reschedule because I can't do -- I can do meets –
>
> ATTY: Right.
>
> ALJ: -- without an ME, but I can't do equals without an ME.
>
> ATTY: Right.

>ALJ: So, would you like to try -- would you like to take a swing at that?  We -- what we'll do is reschedule and request an ME.  Or do you want to go forward today?
>
>ATTY: Probably go forward today.  I mean --
>
>ALJ: Okay
>
>ATTY: -- I think we have the documentation -- or possibly meet --
>
>ALJ: Okay.
>
>ATTY: -- with that.
>
>ALJ: Go ahead.  Proceed.

(Tr. 32-33).

The Court does not believe that "[p]robably go forward today" is a statement by Dinkins as characterized by the ALJ as a belief that the evidence is sufficient to meet the applicable listings and that she wished to proceed without a medical expert. (Tr. 33, 14).

Alabama district courts have reversed and remanded because the ALJ failed to properly develop the record after being presented with sufficient medical records to raise the possibility of a listing impairment.  *See e.g., Stutts v. Astrue*, 489 F. Supp.2d 1291, 1294 (N.D. Ala. 2007) (finding that evidence in the record should have alerted the ALJ to the possibility that the claimant meets or equals Listing and that the duty to develop the record was not pursued by the ALJ).  Additionally, the Eleventh Circuit has established the ALJ's duty to develop the record includes ordering a consultative examination if one is needed to make an informed decision.  *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984)(citing *Ford v. Secretary of Health & Human Servs.*, 659 F.2d 66, 69 (5th Cir.

1981)).  While the court recognizes that a claimant seeking disability bears the burden of proving that he is under disability as defined by the Act, the ALJ is to *fully and fairly* develop the record regarding the claimant's alleged Listing impairment and failed to do so by not ordering a consultative examination.  *Ford*, 659 F.2d at 69 (citing *Sellars v. Secretary*, 458 F.2d 984 (8th Cir. 1972) (emphasis added)).   The court established that an administrative decision is not supported by substantial evidence if the ALJ "does not have before him sufficient facts on which to make an informed decision."  *Id*.  While the regulations provide that the ALJ may order consultative examinations it is not required to order such examinations "unless the record establishes that an examination is necessary to enable the [ALJ] to render a decision."  *Id*. (citing *Turner v. Califano*, 563 F.2d 669 (5th Cir. 1977)).  The ALJ's initial reaction in recognizing the need for a medical expert to either conduct an examination of Dinkins or, at a minimum, to examine the medical records and present their opinion as a medical record or be present to testify at the hearing was correct.  (Tr. 32).

Additionally, the issue of Dinkins medication compliance was raised.  Eleventh Circuit has established that where compliance with a prescribed course of treatment is at issue, the ALJ has a duty to fully investigate possible reasons for the alleged noncompliance.  *Lucas v. Sullivan*, 918 F.2d 1567, 1572-73 (11th Cir. 1990).  In *Lucas*, the Court held that the ALJ erred in failing to order objective testing to determine whether factors, other than an epileptic's intermittent noncompliance, contributed to her

11

subtherapeutic drug levels and whether her seizures would be controlled even if she took her medication as prescribed. *Id.* at 1572. Dinkins testified that she was not currently taking any medications that caused any side effects. (Tr. 40). However, the ALJ did only a cursory inquiry as to Dilantin, which Dinkins no longer takes. *Id*. This was insufficient for the ALJ to be able to establish whether compliance with all prescribed medications would sufficiently treat the claimant's alleged disability or the reasons for the alleged noncompliance. *Lucas*, 918 F.2d at 1572-73.

For these reasons, the Court concludes that the Commissioner erred as a matter of law, and that the case warrants remand for further proceedings. In light of the ALJ's failure to fully and fairly develop the record, specifically regarding ordering a medical expert evaluation of the claimant as well as addressing the issues of medication noncompliance, the Court concludes that the ALJ failed to meet his burden in this regard. As a result of this failure, doubt is necessarily cast upon the ALJ's conclusion that the plaintiff is not disabled.

## V. Conclusion

Accordingly, this case will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion. A separate order will be entered.

Done this 1st day of June, 2012.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE